UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BOARD OF TRUSTEES OF THE SHEET
METAL WORKERS, *et al*.,

    Plaintiffs,

v.

ACCU-BALANCE ASSOCIATES, INC.,

    Defendant.
_____/

No. C-05-3470 EMC

**REPORT AND RECOMMENDATION
RE PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT
(Docket No. 25)**

    Plaintiffs are employee benefit plans and trustees of those plans (collectively referred to as "Trust Funds"). The Trust Funds filed suit against Defendant ACCU-Balance Associates, Inc. pursuant to the National Labor Relations Act, *see* 29 U.S.C. § 185, the Employee Retirement Income Security Act ("ERISA"), *see* 29 U.S.C. §§ 1132, 1145, and the Federal Declaratory Judgment Act. *See* 28 U.S.C. § 2201 *et seq*. After ACCU-Balance failed to respond to the Trust Funds' complaint, default was entered on December 16, 2005. *See* Docket No. 10. The Trust Funds thereafter moved for default judgment. Having considered the Trust Funds' briefs and accompanying submissions, the Court hereby recommends that the motion for default judgment be **GRANTED**.

## I.    FACTUAL & PROCEDURAL BACKGROUND

    The Trust Funds sued ACCU-Balance on August 26, 2005. According to the complaint, ACCU-Balance is a corporation in California, and it failed to make contributions to the Trust Funds as required by agreements entered into between ACCU-Balance and Sheet Metal Workers Local Union No. 104. *See* Compl. ¶¶ 4-6.

ACCU-Balance was served with the summons and complaint by personal delivery on September 28, 2005. After ACCU-Balance did not respond to the complaint, the Trust Funds requested entry of default by the court, which was granted on December 16, 2005. *See* Docket No. 10. Subsequently, the Trust Funds engaged in settlement discussions with ACCU-Balance, and ACCU-Balance paid contributions owed for the months of June, July, and August 2005. *See* Supp. Carroll Decl. ¶ 2. However, ACCU-Balance still owed contributions for other months *See* Docket No. 12 (Carroll Decl. ¶4); Docket No. 17 (Carroll Decl. ¶4); Docket No. 22 (Carroll Decl. ¶4); Supp. Carroll Decl. ¶ 2. It appears that ACCU-Balance has now closed and the Trust Funds are unable to contact the owner of the company. *See* Docket No. 22 (Carroll Decl. ¶ 4). The Trust Funds thereafter filed the pending motion for default judgment on August 8, 2006.

## II.  DISCUSSION

A.  Adequacy of Service of Process

As a preliminary matter, the Court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a corporation "in a manner prescribed for individuals by subdivision (e)(1)," and Rule 4(e)(1) in turn allows for service "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4.

Under California law, a summons and complaint may be served on a corporation by delivering a copy of the documents (1) "to the person designated as agent for service of process" under certain provisions of the California Corporations Code or (2) to the "president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10(a), (b).

On September 28, 2005, the Trust Funds served ACCU-Balance by personally delivering the summons and complaint to company's vice-president, Gordon Yu. *See* Docket No. 5 (proof of service). As such, service of process was properly effected.

B.  Merits of Motion for Default Judgment

As noted above, ACCU-Balance's default was entered on December 16, 2005. After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Because default has already been entered in this case, the Court must take as true all factual allegations in the Trust Funds' complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

The majority of the above factors weigh in favor of default judgment. For example, if the motion for default judgment were to be denied, then the Trust Funds would likely be without a remedy. Notably, the parties engaged in settlement discussions but ACCU-Balance failed to pay all of the contributions owed. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Also, the sum of money at stake in the action is appropriate as it is tailored to the specific misconduct of ACCU-Balance. *See id.* at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, because ACCU-Balance has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Further, there is no indication that ACCU-Balance's default was due to excusable neglect -- especially when ACCU-Balance participated in settlement negotiations with the Trust Funds.

   The only factors that deserve closer analysis are the second and third factors -- *i.e.*, the merits of the Trust Funds' substantive claim and the sufficiency of the complaint. The Trust Funds have provided evidence that ACCU-Balance and Sheet Metal Workers' International Association, Local Union No. 104, entered into an agreement under which ACCU-Balance agreed to be bound by a certain collective bargaining agreement. *See* Van Den Heuvel Decl., Ex. 1 (Affirmation Agreement). Under the collective bargaining agreement, ACCU-Balance would make contributions to the trust funds. *See id.* (Addendum No. 1, Item 5, providing that payment shall be made to certain Trust Funds based on "each hour worked by each employee, including overtime on all work covered by this Agreement"). The collective bargaining agreement incorporates by reference agreements for the Trust Funds. *See id.* (Addendum No. 1, Item 4, ¶ F & Item 5, ¶ F). The agreements for the Trust Funds contain identical language with respect to damages due if contributions are not paid. *See* Maraia Decl. ¶ 4 ("Each of the other plaintiff trust funds' Agreements and Declarations of Trust contain identical language."). Attached to the Maraia declaration as Exhibit 3 is a representative Trust Agreement. *See id.*, Ex. 3.

   Article III, Paragraph A of the Trust Agreement provides that "[a]ll Employer contributions required by a Contribution Agreement shall be payable on the Due Date specified in paragraph B below." *Id.* (Art. III, ¶ A). Paragraph B states that "[t]he Due Date for an Employer's contributions for a month shall be the Due Date specified in the underlying collective bargaining agreement; if the underlying collective bargaining agreement does not specify a Due Date, payments must be received by the 20th day of the month immediately following the month for which the contribution is made." *Id.* (Art. III, ¶ B). Any contribution not received by that date is considered delinquent. *See id.* (Art. III, ¶ C). The Trust Funds' complaint alleges, and the court must accept as true, *see Televideo Sys., Inc.*, 826 F.2d at 917, that Defendant is delinquent in payments to the Trust Funds for the months between January 2000 and December 2002 as required by the collective bargaining agreement and Trust Fund agreements. *See* Compl. ¶¶ 6-9. Thus, the Trust Funds have successfully stated a claim for relief under ERISA. *See* 29 U.S.C. § 1145 (providing that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such

contributions in accordance with the terms and conditions of such plan or such agreement:); *id*. § 1132(a)(3) (authorizing, inter alia, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation).

For the foregoing reasons, the Court recommends that the Trust Funds' motion for default judgment be granted. The fact that ACCU-Balance has now closed does not protect it from a default judgment. *Cf. Grell v. Laci Le Beau Corp.,* 73 Cal. App. 4th, 1300, 1306 ("[A] suspended corporation is not protected against a judgment by default upon its failure to answer within the time allowed.")

D.  Damages

Because the Court concludes that default judgment is warranted, it must determine what damages are appropriate. The Trust Funds have the burden of "proving up" their damages. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,* No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

Under 29 U.S.C. § 1132(g)(2), a court shall award a fiduciary who prevails in a § 1145 claim (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions), (D) reasonable attorney's fees and costs, and (E) other appropriate legal or equitable relief. *See* 29 U.S.C. § 1132(g)(2); *see also* Compl. at 4 (prayer for relief, asking for liquidated damages, unpaid contributions, attorney's fees, interests, and other appropriate relief). In its motion for default judgment, the Trust Funds ask for (1) any unpaid contributions from January 2002 through December 2002; (2) liquidated damages for any delinquent contributions; (3) interest; and (4) attorney's fees and costs.

1.  Unpaid Contributions

The Trust Funds assert that, from January 2000 to December 2002, ACCU-Balance failed to make the full contributions to various trusts. In support of this assertion, the Trust Funds have provided a declaration by Mary Anne Delaney, a manager at Lindquist LLP, a CPA firm. *See* Delaney Decl. ¶ 1. In her declaration, Ms. Delaney states that her firm conducted a compliance test

of the books and records of ACCU-Balance for the period January 2000 to December 2002. *See id.* ¶ 3. The compliance test result is attached as Exhibit 2 to the Delaney declaration. The firm concluded that "during July 2002 through December 2002 the employer excluded overtime hours when reported to the total fringe. Therefore various employee[s] worked more hours during the month than the number of hours reported to the Trusts." *Id.*, Ex. 3, at 4. The total was 1,194 hours under-reported hours. *See id.* at 5-10. The total principal due for each unreported hour per employee amounts to $13,410.25.

The Court finds that the evidence submitted by the Trust Funds sufficiently establishes that there are $13,410.25 due in unpaid contributions. The Court has reviewed the CPA firm's calculations, and they appear to be correct. Although the Trust Funds did not provide to the Court the underlying documents used by the firm (*i.e.*, ACCU-Balance's books and records), the Court accepts the statement in Ms. Delaney's declaration, provided under penalty of perjury, that the test was conducted using ACCU-Balance's books and records. *See id.* ¶ 3. The supplemental Carroll declaration confirms that none of the $13,410.25 was paid by ACCU-Balance during settlement discussions. *See* Supp. Carroll Decl. ¶ 2. The declaration also confirms that the parties did not, during settlement discussions, agree upon a compromise amount that would govern this motion for default judgment. *See id.*

2. <u>Liquidated Damages</u>

The Trust Funds also ask to be paid -- pursuant to the Trust Agreements -- liquidated damages for unpaid contributions still owing for the months of January 2000 through December 2002.

Article III, Paragraph A of the representative Trust Agreement provides that "[a]ll Employer contributions required by a Contribution Agreement shall be payable on the Due Date specified in paragraph B." *See* Maraia Decl., Ex. 3 (Art. III, ¶ A). Paragraph B states that payment of the trust contributions must be postmarked no later than the 20th day of the month immediately following the month for which the contribution is made. *See id.* (Art. III, ¶ B). Any contribution not received by that date is considered delinquent. *See id.* (Art. III, ¶ C). Article III, Paragraph C establishes the right of the Trust Funds to collect liquidated damages equal to 10% of the delinquent amount. *See*

*id*. The same paragraph also provides that "the Joint Board may adopt special rules applicable in cases of multiple delinquencies by an Employer," including providing liquidated damages and interest "up to the highest rate permitted under Section 515 of ERISA." *Id*. Under a 1996 amendment to the Trust Agreement, "[o]nce a matter is referred to collection counsel, liquidated damages increase as of the date of referral to 20% of the total amount of any billing still due and owing as of that date." *See id*. ¶ 6 & Ex. 3 (Appendix D).

Under 29 U.S.C. § 1132(g)(2)(C), a fiduciary who prevails in a § 1145 claim is entitled to "an amount equal to the greater of -- (I) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent." *See* 29 U.S.C. § 1132(g)(2)(C). Under Ninth Circuit law, an award of liquidated damages under § 1132(g)(2) is "mandatory and not discretionary." *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984). "To be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 275 (9th Cir. 1996). In this case, all three requirements have been met. First, the Trust Funds have alleged that ACCU-Balance was delinquent in paying certain owed contributions. Because default has been entered in this case, the Court must take as true all factual allegations in the Trust Funds' complaint. Second, this Court has recommended that default judgment be entered in favor of the Trust Funds. Third, the Trust Agreement provides for the recovery of liquidated damages. *See* Maraia Decl., Ex. 3 (Art. III, ¶ C and Appendix D).

Given the above, the Court finds that the Trust Funds have met their burden of proof in establishing their entitlement to liquidated damages. The Court recommends that the Trust Funds be awarded liquidated damages in the amount of $2,682.05 (*i.e.*, 20% x $13,410.25).[1]

3.   <u>Interest</u>

---

[1] The Court notes that, under § 1132(g)(2)(C), where the amount of liquidated damages provided for in an agreement is less than the prejudgment interest, a court is "statutorily required to award . . . an amount equal to the prejudgment interest as liquidated damages." *Operating Engineers Pension Trust*, 746 F.2d at 569. However, this double interest was not requested by the Trust Funds.

7

In addition to the above, the Trust Funds seek interest at the annual rate of 15% on the delinquent contributions for a total of $7,570.74. Under 29 U.S.C. § 1132(g)(2), a fiduciary who prevails in a § 1145 claim is entitled to not only liquidated damages provided for by the plan but also "interest on unpaid contributions." 29 U.S.C. § 1132(g)(2)(B). "[T]he statutory language is clear, the award of damages and interest is mandatory." *Connors v. Beth Energy Mines, Inc.*, 920 F.2d 205, 212 (3rd Cir. 1990); *see also Board of Trustees v. California Coop. Creamery*, 877 F.2d 1415, 1427-28 (9th Cir. 1989) (holding that "an award of attorney's fees, costs, interest, and liquidated damages would be mandatory" under § 1132(g)(2)).

The rate of "interest on unpaid contributions shall be determined by using the rate provided under the plan, or if none, the rate prescribed under [26 U.S.C. § 6621]." 20 U.S.C. § 1132(g)(2). The representative Trust Agreement provides that "both the contribution and the liquidated damages attributable thereto shall bear interest at a rate to be determined from time to time by resolution of the Board and published to Contributing Employers beginning with the first day of the month following the Due Date." Maraia Decl., Ex. 3 (Art. III, ¶ C)). In 2001, the Board adopted a 15% per annum interest rate. *See* Carroll Decl. ¶¶ 7-8 & Ex. 7.

Based on the above, the Court finds that the Trust Funds have met their burden of proof regarding entitlement to interest at the rate of 15% per annum. Accordingly, the Court recommends that the Trust Funds be awarded the amount of interest that they seek -- *i.e.*, $7,570.74. For the benefit of the district court's review, the Court notes that the Trust Funds explained how they arrived at this sum in the Maraia declaration. *See* Maraia Decl. ¶ 9. In short, based on the $13,410.25 in unpaid contributions, $2,011.54 would be due each year (*i.e.*, 15% x $13,410.25 = $2,011.54). The daily interest would therefore be $5.51 (*i.e.*, $2,011.54 ÷ 365 days). The Trust Funds asked for interest for the period January 20, 2003, to October 25, 2006 -- *i.e.*, 1,374 days. Therefore, the total interest is $7570.74 (*i.e.*, $5.51 x 1,374 days).

4.   Attorney's Fees and Costs

Finally, the Trust Funds ask for the reasonable fees and costs they incurred, totaling $2,481.02. According to the Trust Funds, they incurred $740.00 in fees related to this litigation, consisting of four hours of attorney time at $185 per hour. *See* Carroll Decl. ¶ 5. As for costs, the

Trust Funds state that they incurred $1,741.02, consisting of a filing fee in the amount of $250, an employer audit testing fee in the amount of $1,341.02, and service-of-process fees (for the summons and complaint) in the amount of $150.00. *See id.* ¶ 2 & Ex. 5; *see also* Delaney Decl., Ex. 2.

Article III, Paragraph E of the Trust Agreement provides that, if legal action is instituted by the Trust for collection of delinquent contributions, an employer shall pay, *inter alia*, audit and/or employer compliance test fees, court costs and reasonable attorney's fees. *See* Maraia Decl., Ex. 3. In addition, 29 U.S.C. § 1132(g)(2), provides that, "[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2). *Compare id.* § 1132(g)(1) (providing that a court in its discretion may award fees and costs).

      a.    <u>Attorney's Fees</u>

Unlike a discretionary fee award under § 1132(g)(1), a fee award under § 1132(g)(2) is mandatory. *See Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983) (noting that § 1132(g)(2) "now makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions"). Courts may, however, consider the reasonableness of a fee award under § 1132(g)(2). *See id.* at 997-98 (citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980)).

In *Hummell*, the Ninth Circuit identified five factors that a court should consider when determining whether an award of attorney's fees is appropriate under § 1132(g)(1): (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees would deter others from acting under similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. *See Hummell*, 634 F.2d at 452. In *Kemmis*, the Ninth Circuit indicated that these factors could also inform the reasonableness of a fee award under § 1132(g)(2). *See id.* at 997-98 (citing *Hummell*). In addition, reasonableness should be informed by the typical *Hensley* lodestar/multiplier approach. *See id.* at 998 (citing *Johnson* factors discussed in *Hensley*); *see also*

*Van Gerwen v. Guarantee Mut. Ins. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (applying the *Hensley* lodestar/multiplier approach to determine reasonable attorney's fees under § 1132(g)(1) instead of § 1132(g)(2)).

In the instant case, the attorney's fees sought by the Trust Funds are generally reasonable, both in terms of hours and rate. Accordingly, the Court recommends that the Trust Funds be awarded fees in the amount of $740.00.

        b.   <u>Costs</u>

Both § 1132(g)(1) and § 1132(g)(2) specify that not only are attorney's fees recoverable but also costs. In *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996), the Ninth Circuit held that the allowance for costs under § 1132(g)(1) "empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920, and only in the amounts allowed by section 1920 itself, by 28 U.S.C. § 1821 [providing for witness fees] or by similar such provisions." *Id.* at 544. Given the Ninth Circuit's approach for § 1132(g)(1), it is reasonable to apply the same approach to § 1132(g)(2).

Accordingly, the Court recommends that the Trust Funds be awarded as costs the filing fee of $250 and the service-of-process fees (for the summons and complaint) of $150.00. *See* 28 U.S.C. § 1920 (stating that a court may tax as costs fees of the clerk and marshal); Civ. L.R. 54-3(a)(1) ("The Clerk's filing fee is allowable if paid by the claimant."); Civ. L.R. 54-3(a)(2) ("Fees for service of process by someone other than the marshal acting pursuant to FRCivP 4(c), are allowable to the extent reasonably required and actually incurred.").

        c.   <u>Audit Costs</u>

Finally, the Trust Funds request audit costs in the amount of $1,341.02. Under Article III, Paragraph E of the Trust Agreement, in the event that the Trust Funds incur expenses during a suit or claim against ACCU-Balance, ACCU-Balance "shall reimburse the Trust, or its assignee, for all reasonable attorney's fees, *audit and/or Employer compliance test fees*, court costs, collection agency fees, and all other reasonable expenses." Maraia Decl., Ex. 3 (emphasis added). Since recovery of audit costs was provided for in the Trust Agreement, the Trust Funds are entitled to the

audit costs sought here. The Court notes that, under Ninth Circuit law, audit costs are recoverable under § 1132(g)(2)(E)[2] "[b]ecause an award of audit costs to the prevailing party is consistent with the policy of encouraging full and fair contributions." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988); *see also Moriarty v. Svec*, 429 F.3d 710, 721 (7th Cir. 2005) (upholding district court's conclusion that "audit costs were part of the relief due to plaintiff under 29 U.S.C.A. § 1132(g)(2)(E)").

### III. CONCLUSION

For the foregoing reasons, the Court recommends that the Trust Funds' motion for default judgment be granted and that damages be awarded as follows: $13,410.25 for unpaid contributions; $2,682.05 for liquidated damages; $7,570.74 for interest; $740.00 for attorney's fees; and $1,741.02 for costs (including the audit costs).

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: November 16, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

---

[2] Section 1132(g)(2)(E) provides that, "[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan [*inter alia*] such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E).